# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

SAMUEL ANSTEY,

      Petitioner,

v.                                                            Case No. 2:17-cv-03462

RALPH TERRY, SUPERINTENDENT,
Mt. Olive Correctional Complex,

      Respondent.

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 1), and Respondent's Motion for Judgment on the Pleadings. (ECF No. 22). This case is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned finds that the record before the Court is well-developed and provides a sufficient basis upon which to resolve this matter without need for an evidentiary hearing. *See* Rule 8, Rules Governing Section 2254 Cases. Having thoroughly reviewed and considered the record, the undersigned **FINDS** that Petitioner's second or successive § 2254 petition does not satisfy the requirements of 28 U.S.C. § 2244(b)(2)(B) and is untimely under the one-year statute of limitations set forth in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §

2244(d)(1). Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's Motion for Judgment on the Pleadings, (ECF No. 22); **DENY** Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 1); and **DISMISS** this case from the docket of the Court.

## I.    Relevant Factual and Procedural History

In the early morning hours of February 8, 1994, a fire occurred at the mobile home where Petitioner Samuel Anstey ("Anstey") lived with his grandmother, who had adopted him as a child. *Anstey v. Ballard*, 787 S.E.2d 864, 868 (W. Va. 2016). Anstey escaped the fire through his bedroom window, but his grandmother died four days later as a result of smoke inhalation. *Id.* at 869. Anstey was tried in the Circuit Court of Fayette County, West Virginia (the "state court") for first-degree murder by arson in violation of West Virginia Code § 61-2-1 (1991). The state adduced a theory that Anstey, who was at the time an out-of-work coal miner, manipulated a toaster in the kitchen to catch fire and that he started a separate fire in his grandmother's bedroom. *Id.* at 870. The state offered additional circumstantial evidence of arson, including (1) that Anstey's bedroom door was surrounded by a towel and weather-stripping, which the state argued impeded smoke from entering; (2) that Anstey escaped the fire through his bedroom window, taking with him a shotgun and clothing, but leaving his grandmother behind; and (3) that he drove to various neighbors' homes before returning to the closest neighbor's house, who ultimately called authorities. *Id.* at 869-70; (ECF No. 22-2 at 153-54). The state also offered evidence that Anstey's relationship with his grandmother was tumultuous and that Anstey physically abused his elderly grandmother during their various altercations. *Id.* at 866-67. According to the state, Anstey had a financial motive to kill his grandmother, because in the days preceding the fire, Anstey's grandmother

2

had threatened to disinherit Anstey as the beneficiary of her sizeable estate, which consisted primarily of certificates of deposit valued in the hundreds of thousands of dollars. *Anstey*, 787 S.E.2d at 867-68.

In September 1995, after an eleven-day jury trial, Anstey was convicted of first-degree murder without a recommendation of mercy. *Id.* at 873. He was sentenced to serve the remainder of his life in prison without the possibility of parole. *Id.* Anstey filed a direct appeal of his conviction, which the Supreme Court of Appeals of West Virginia ("SCAWV") refused on December 4, 1996, given that appellate review was discretionary at that time. *Anstey v. Painter*, No. 5:99-cv-00120, 2000 WL 34012352, at *3 (S.D.W. Va. Mar. 16, 2000). Anstey then filed an unsuccessful petition for a writ of habeas corpus in the state court on February 6, 1998. He appealed the denial of that petition to the SCAWV, which again refused the appeal on December 16, 1998. *Id.* at *4.

After exhausting his state remedies, Anstey filed a federal post-conviction petition under 28 U.S.C. § 2254 in this Court on February 4, 1999. *Id.* The petition alleged that Anstey's conviction should be vacated due to various errors committed by the trial court, prosecutor, and Anstey's trial counsel. (ECF No. 1-2 at 133-57). However, as is relevant to the present matter, the petition did not allege errors relating to the arson investigation or arson evidence used to convict Anstey. (*Id.*). The Court dismissed the petition on the ground that it was untimely under the AEDPA, which became law on April 24, 1996 and imposed a one-year period of limitations in which state prisoners must file their federal habeas petitions. *Anstey*, 2000 WL 34012352, at *3, *6; s*ee* 28 U.S.C. § 2244(d)(1). Anstey appealed the decision to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), which affirmed the dismissal of his federal habeas petition. *Anstey v. Painter*, 20 F. App'x 171, 171-72 (4th Cir. 2001).

More than a decade later, in May 2014, Anstey filed a second state habeas petition asserting new claims. *Anstey*, 787 S.E.2d at 873. Anstey argued that the advancement of fire science and arson investigation since his 1995 conviction constituted "newly discovered evidence" and demonstrated that his trial was fundamentally unfair in violation of his right to due process of law. *Id.* at 873-74. The advancement to which Anstey referred was the *National Fire Protection Association 921 Guide for Fire and Explosion Investigations* ("NFPA 921"). *Id.* at 874. Anstey argued that although the NFPA 921 was first published in 1992, it did not become the national authority for standards in fire investigation until 2000 upon its endorsement by the United States Department of Justice, which was after his conviction. *Id.* The state court denied Anstey's habeas petition, and he appealed the decision to the SCAWV. On June 2, 2016, the SCAWV concluded that Anstey had not shown the existence of newly-discovered evidence warranting a new trial. *Anstey*, 787 S.E.2d at 875-82.

On June 28, 2017, Anstey filed the instant successive federal habeas petition, asserting the same grounds that he raised in his second state habeas petition. Anstey argues that his conviction should be vacated because "the advancement in the scientific method and understanding of fire science" since his 1995 conviction constitutes "newly discovered evidence." (ECF No. 1 at 30). He contends that the arson investigators failed to follow the proper scientific methods espoused in the 1992 version of the NFPA 921 guidelines; that the prosecution should have known that the arson investigators did not use the proper methods and thus should have not offered them as witnesses; that his trial counsel was ineffective in failing to challenge the unreliable scientific testimony; and that he is actually innocent of the crime of which he was convicted. *Id.* Anstey has received authorization from the Fourth Circuit to file this successive habeas petition.

4

(ECF No. 17).

## II.    **Motion for Judgment on the Pleadings**

Respondent has filed a Motion for Judgment on the Pleadings, arguing that Anstey's successive federal petition for habeas relief should be dismissed for three reasons. First, Anstey has not satisfied the requirements of 28 U.S.C. § 2244(b)(2)(B), which govern second or successive habeas corpus applications asserting claims that were not raised in a previous petition. According to Respondent, Anstey must show that his successive petition falls within one of two narrow exceptions under § 2244(b)(2)(B), which Anstey has failed to do.

Second, Respondent asserts that the petition is untimely even under the most permissive assessment of timeliness. Respondent indicates that under the AEDPA's one-year limitations period a petition asserting claims of newly discovered evidence, such as Anstey's petition, must be filed within one year of the date on which the factual predicate of the claims could have been discovered through the exercise of due diligence. Respondent contends that the factual predicate of Anstey's claims—that being, the fire investigation standards contained in the NFPA 921—was readily available and discoverable well before Anstey filed his federal habeas petition. Accordingly, Anstey's petition is precluded by the statute of limitations bar.

Finally, Respondent challenges Anstey's claims of actual innocence. Respondent notes that Anstey makes two types of actual innocence claims: one is a "gateway" claim to overcome the procedural obstacles that would otherwise preclude review of his petition; the second is a "freestanding" claim of innocence. Respondent argues that freestanding claims of innocence have not been recognized by the Supreme Court of the United States ("Supreme Court") or the Fourth Circuit. With respect to Anstey's

"gateway" innocence claim, Respondent maintains that Anstey must still satisfy the requirements of 28 U.S.C. § 2244(b)(2)(B) to benefit from an actual innocence procedural gateway, which again, Anstey cannot do.

In response to these arguments, Anstey maintains that he has fulfilled the requirements of § 2244(b)(2)(B). In Anstey's view, advancements in the field of fire science and investigation constitute a factual predicate that could not have been discovered at the time of trial through due diligence. Furthermore, Anstey asserts that if state investigators had followed the NFPA 921 guidelines when they investigated the fire at his grandmother's trailer, the outcome of his trial would have been different, because no reasonable factfinder could have found him guilty of murder by arson.

As to the timeliness of the petition, Anstey argues that this action is not time-barred, because the one-year limitation period contained in § 2244(d)(1) does not apply to second or successive petitions. At a minimum, Anstey contends, the statute is ambiguous as to whether the one-year limitation applies and, therefore, should be construed in his favor. In any event, Anstey believes that his petition was timely filed, because it was filed within one year and ninety days (the time frame allowed for an appeal to the Supreme Court) after the WVSCA affirmed the state habeas court's denial of his second habeas petition.

Lastly, Anstey contends that his actual innocence gateway claims are not procedurally barred. He reiterates that advancements in fire investigation constitute newly discovered evidence, thus excusing any procedural bar and allowing this Court to review the substantive constitutional challenges. Moreover, Anstey disagrees that the Fourth Circuit and Supreme Court have foreclosed freestanding actual innocence claims. He asserts that the validity of his freestanding actual innocence claim is apparent

6

on even the most cursory review of the evidence. As to both innocence claims, Anstey argues that if the flawed fire investigation evidence were removed from his case, the remaining circumstantial evidence would be entirely insufficient to convict him of murder by arson.

## III.  <u>Standard of Review</u>

A motion for judgment on the pleadings filed under Federal Rule of Civil Procedure 12(c) "is analyzed under the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (citing *Burbach Broad. Co. of Del. v. Elkins Radio Corp.,* 278 F.3d 401, 405–06 (4th Cir. 2002)). A complaint fails to state a claim when, viewing the factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 570 (2007).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit,* 759 F.3d 343, 353 (4th Cir. 2014) (citation omitted); *Wolfe v. Johnson,* 565 F.3d 140, 169 (4th Cir. 2009). Nevertheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey,* 759 F.3d at 353 (quoting *Blankenship v. Manchin,* 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a section 2254 case must consider "the face of the petition and any attached exhibits." *Walker v. Kelly,* 589 F.3d 127, 139 (4th Cir. 2009) (quoting *Wolfe,* 565 F.3d at 169) (internal markings omitted). In addition, the

court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.*

IV.    **Discussion**

    **A. Anstey's second or successive petition does not satisfy the requirements of 28 U.S.C. § 2244(b)(2)**

Congress enacted the AEDPA to "reduce delays in the execution of state and federal criminal sentences" and to "further the principles of comity, finality, and federalism." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (quoting *Woodford v. Garceau,* 538 U.S. 202 (2003)). To accomplish this purpose, Congress codified various mechanisms into the AEDPA, including a gatekeeping function that was based upon abuse of writ principles. Under the AEDPA, federal courts are permitted to consider second or successive habeas petitions only in narrow, explicitly-defined circumstances. *In re Wright*, 826 F.3d 774, 782 (4th Cir. 2016). Very critically, regardless of a petitioner's professed innocence or the merit of his habeas petition, a "claim in a second or successive § 2254 petition that was not presented in a prior petition must be dismissed unless the petitioner (1) shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable or (2) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2).

"Although Congress did not define the phrase 'second or successive,' as used to modify habeas corpus application under section 2254, it is well settled that the phrase does not simply refer to all § 2254 applications filed second or successively in time." *Magwood v. Patterson*, 561 U.S. 320, 332 (2010). A petition is second or successive when it challenges the legality of the same judgment that was challenged in a prior petition that was adjudicated on the merits. *Slack v. McDaniel*, 529 U.S. 473, 485–89 (2000); *In re Gray*, 850 F.3d 139, 141 (4th Cir. 2017).

Anstey initially argued in this case that he filed a "second-in-time, but first" § 2254 petition, as opposed to a second or successive petition, because his first § 2254 habeas petition was dismissed as untimely and not reviewed on the merits. (ECF No. 8 at 2). However, unlike a dismissal of a § 2254 petition on the basis that it was prematurely filed before a petitioner exhausted his state remedies, a dismissal of a § 2254 petition as procedurally barred under the AEDPA statute of limitations is considered to be a dismissal on the merits for the purpose of determining whether a subsequent § 2254 petition is second or successive. *Ross v. Terry*, No. 2:16-CV-03826, 2016 WL 8488167, at *4 (S.D.W. Va. Oct. 6, 2016), *report and recommendation adopted,* 2017 WL 971047 (S.D.W. Va. Mar. 13, 2017) (collecting cases). Furthermore, after instituting this proceeding, Anstey filed an action in the Fourth Circuit to determine whether his petition was "second-in-time, but first" or second or successive. *See* (ECF No. 34 at 2 n.1). The Fourth Circuit authorized the instant federal petition as a successive application for post-conviction relief. (ECF No. 17). Therefore, the Fourth Circuit concluded that Anstey's current petition is indeed a successive habeas petition and not a second-in-time, but first petition. *Cf. In re Gray*, 850 F.3d 139, 140 (4th Cir. 2017) (stating that if the court of appeals concludes that a later-filed petition is not

second or successive, it denies the motion for authorization to file a second or successive petition as unnecessary and returns the petition to the district court).

Consequently, Anstey's successive petition must be dismissed unless he shows that a new rule of constitutional law applies to his case, or he demonstrates the existence of a new factual predicate that meets the requirements of 28 U.S.C. § 2244(b)(2)(B). In this case, Anstey does not rely on a new rule of constitutional law under 28 U.S.C. § 2244(b)(2)(A). Rather, Anstey contends under 28 U.S.C. § 2244(b)(2)(B) that he presents "newly discovered evidence in the form of substantial advancements in the field of fire science and investigation that could not have been discovered at the time of trial through diligence," which, "viewed in light of the evidence as a whole, would be sufficient to establish that no reasonable factfinder would have found [him] guilty of the underlying offense." (ECF No. 34 at 2).

The undersigned notes that while the Fourth Circuit concluded for the purpose of granting Anstey authorization to file this second or successive motion that Anstey made a *prima facie* showing that the § 2244(b)(2)(B) requirements were satisfied, the Fourth Circuit's decision was simply a conclusion that Anstey made "a sufficient showing of possible merit to warrant a fuller exploration by the district court." *In re McFadden*, 826 F.3d 706, 707 (4th Cir. 2016). The Fourth Circuit's authorization of this petition was not dispositive of the determination of whether Anstey survives the gatekeeping requirements for the court to consider the merits of his successive habeas petition. *Id.* Accordingly, Anstey's petition should be examined to determine whether it satisfies both prongs of 28 U.S.C. § 2244(b)(2)(B).

Beginning with the first prong of 28 U.S.C. § 2244(b)(2)(B), Anstey must show that the factual predicate for the claims that he raises in his federal habeas petition could

not have been discovered previously through the exercise of due diligence. 28 U.S.C. § 2244(b)(2)(B)(i). Although the AEDPA does not define the term "factual predicate," courts within the Fourth Circuit have interpreted the term to mean "evidentiary facts or events and not court rulings or legal consequences of the facts." *Diver v. Jackson*, No. 1:11-CV-00225, 2013 WL 784448, at *3 (M.D.N.C. Mar. 1, 2013) (quoting *Brackett v. United States,* 270 F.3d 60, 69 (1st Cir. 2001)) (concerning § 2244(d)(1)(D), which includes the same language as §2244(b)(2)(B)(i)); *accord Gary v. Johnson*, No. 2:10-CV-00123, 2010 WL 11527408, at *5 (E.D. Va. June 18, 2010). The phrase "discovered previously" is likewise not defined in the AEDPA, but the Fourth Circuit has stated that the term "previously" refers to the last federal proceeding in which the petitioner challenged the same criminal judgment. *In re Williams*, 364 F.3d 235, 239 (4th Cir. 2004) (regarding 28 U.S.C. § 2244(d)(1)(D)). Therefore, Anstey must show that the evidentiary facts or events that support the claims in his federal petition could not have been discovered at the time of his prior § 2254 petition in February 1999.

As discussed, in the petition, Anstey claims that he was wrongfully convicted of arson based upon unreliable testimony from fire investigators and experts that failed to adhere to the proper fire investigation methods specified in the NFPA 921. (ECF No. 1). He states that the "new factual predicate" for his habeas claims is the NFPA 921. (ECF No. 34 at 2). Anstey concedes that NFPA 921 is far from a new publication. In fact, he readily admits that the first version of NFPA 921 was published in 1992, which was years before the fire investigation in his case. However, Anstey asserts that NFPA 921 was not recognized as the prevailing standard of fire investigation until the early 2000s and, even then, the fire investigation community was slow to adopt the NFPA 921 standards. (*Id.* at 3). He contends that he "could not have discovered the later accepted, adopted

11

and implemented versions of NFPA through any exercise of due diligence." (*Id.* at 4).

### 1. The NFPA 921 is not a "factual predicate" for Anstey's claims

Importantly, Anstey does not allege that any of the facts concerning the fire investigation, the evidence used to convict him, his trial counsel's actions, or even the NFPA 921 itself was unavailable at the time of his last federal habeas proceeding. Indeed, all of the facts and evidence concerning the fire investigation were available as early as 1995, at the time of Anstey's trial. The NFPA 921 was also available at that time, and Anstey's trial counsel referenced the NFPA 921 in his cross-examination of the state's witness. *Anstey*, 787 S.E.2d at 871. Therefore, the existence of the standards in the NFPA 921 was known to Anstey as early as 1995. As recognized by Respondent, Anstey's defense focused on challenging the quality of the fire investigation and the validity of the state's theory regarding the cause of the fire. (ECF No. 23 at 13-14). While Anstey might not have thought to focus specifically on the NFPA 921 standards, he undoubtedly advanced the argument that the fire investigation was improper and that the opinions offered by the experts regarding the cause and origin of the fire were wholly unreliable and inaccurate. The United States Court of Appeals for the Second Circuit has stated that "if new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a factual predicate." *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012) (citing *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007) (observing that the petitioner had "confused the facts that make up his claims with evidence that might support his claims"). "Furthermore, it should go without saying that a factual predicate must consist of *facts*" and the "[c]onclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim." *Id.*

12

### 2. In any event, the NFPA 921 could have been discovered previously through the exercise of due diligence

Moreover, even if the NFPA 921 could be accepted as a factual predicate for Anstey's claims, he fails to demonstrate that this factual predicate could not have been discovered previously through the exercise of due diligence. The crux of Anstey's petition is that the fire investigation performed in 1994 significantly failed to conform to the 1992 version of the NFPA 921. (ECF Nos. 1, 34). To that end, Anstey submits expert affidavits in support of his position that "[i]f the state's investigators had followed the 1992 version of the NFPA guidelines—as they implied they had done in testimony—the only possible result of their investigation would have been that the fire's cause and origin were undetermined." (ECF No. 1 at 33). Yet, Anstey offers no justifiable explanation as to what precluded him from raising that argument and submitting similar affidavits in his prior habeas petition in February 1999. Although Anstey claims to have found "newly discovered evidence," he wholly fails to show that subsequent updates to the NFPA 921 and its more widespread adoption provide a viable new factual basis upon which to challenge his conviction. Simply because the NFPA 921 has been updated and become more widely adopted in the fire investigation community does not mean that it was previously unavailable to Anstey.

### 3. The facts underlying Anstey's claims, if proven, would be insufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found Anstey guilty of arson

Finally, even if Anstey is able to overcome the insurmountable hurdle of showing that the factual predicate for his claims could not have been discovered previously through the exercise of due diligence, he must show that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish

13

by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B), *McQuiggin*, 569 U.S. at 396. Anstey argues that he would never have been convicted of murder by arson if the alleged unreliable testimony concerning the cause and origin of the fire was not admitted at trial. (ECF No. 34). However, as Respondent correctly points out, Anstey fails to appreciate the circumstantial evidence that was offered to sustain his conviction. Even if the testimony based on the fire investigation was excluded or disproven at trial due to the investigators' failure to adhere to the NFPA 921, the state offered circumstantial evidence of Anstey's guilt. The state offered the undisputed fact that only Anstey and his grandmother were present in the home when the fire started. The state introduced evidence concerning the troubled relationship between Anstey and his grandmother, as well as his grandmother's recent threats to disinherit Anstey in her will. In addition, Anstey's actions during the fire were questionable. Anstey escaped through his bedroom window, taking belongings with him, but leaving his grandmother in the burning trailer without making an effort to rescue her. He then drove to several neighbors' homes before returning to the closest neighbor's house, which was a mere fifty-five feet from the burning trailer. Only that neighbor was available to call for help. *Ballard*, 787 S.E.2d 866-69. The undersigned cannot conclude by clear and convincing evidence that no jury would have convicted Anstey based on the foregoing circumstantial evidence.

In West Virginia, "to sustain a conviction of arson, when the evidence offered at trial is circumstantial, the evidence must show that the fire was of an incendiary origin and the defendant must be connected with the actual commission of the crime." *State v. Mullins*, 383 S.E.2d 47, 53 (W. Va. 1989). However, the sufficiency of evidence that is

14

required to show that a fire was incendiary in nature is extremely low. For instance, in one case, the only evidence of incendiary origin "consisted of the testimony of fire marshals that they believed the fire to be of incendiary nature, caused by a flammable liquid." *State v. Adkins*, 446 S.E.2d 702, 704–05 (W. Va. 1994) (citing *Mullins*, 383 S.E.2d at 52). In another case, *State v. Yates,* 288 S.E.2d 522 (W. Va. 1982), "the evidence of incendiary origin consisted only of the opinion of a deputy [marshal] that the fire was of such origin." *Id.* (citing *Yates,* 288 S.E.2d at 523). "Evidence was even introduced in the *Yates* trial contradicting the State's evidence that the fire was incendiary in nature, but the SCAWV "found that the jury's determination that the fire was incendiary should stand.*" Id.*

Most telling, in a more recent case, *Adkins*, *supra*, no physical evidence was introduced relating to the alleged incendiary nature of two fires that the defendant was accused of setting. *Adkins*, 446 S.E.2d at 705. In fact, regarding one of the fires, the state's expert testified that "he could not completely eliminate natural gas or electrical causation," but that "the fire was suspicious" and he stated that "there was possibly an incendiary fire." *Id.* Regarding the other fire, an expert merely concluded that the fire was "set with human hands." *Id.* The SCAWV held that although "the evidence regarding the incendiary nature of the fires was rather limited, there was sufficient evidence upon which to sustain the jury's conclusion that the fires were of an incendiary nature." *Id.*

Anstey maintains that the jury would have reached a different verdict if the jurors had known that the fire investigators "did not follow any acceptable method of fire investigation – let alone NFPA 921 standards." (ECF No. 34 at 11). However, under West Virginia law, mere testimony that the fire was possibly or probably incendiary was enough to sustain Anstey's conviction. The state was not required to show that the fire

investigators followed any exacting standards in determining that the fire was caused by arson, let alone show that the investigators followed the NFPA 921. Furthermore, as discussed above, the state offered evidence that Anstey was connected to the crime. He admitted that he and his grandmother were alone at the time of the fire and the state offered various evidence of Anstey's suspicious behavior and motive. Therefore, given the standard that this court must apply on habeas review, Anstey cannot show by clear and convincing evidence that a jury would not have convicted him absent the constitutional errors that he alleges in his habeas petition.

For the above reasons, the undersigned **FINDS** that Anstey does not satisfy the requirements of 28 U.S.C. § 2244(b)(2)(B) and his successive petition must be dismissed under the AEDPA.

### B. Anstey's second or successive petition is untimely under 28 U.S.C. § 2244(d)(1)

In addition to imposing strict gatekeeping requirements on second or successive habeas petitions, the AEDPA established a one-year filing deadline in 28 U.S.C. § 2244(d)(1). Anstey argues that "there is not an established one-year-filing requirement for a *second or successive § 2254 petition* under the AEDPA." (ECF No. 34 at 11) (emphasis in original). He contends that the one-year period of limitation provided in 28 U.S.C. § 2244(d)(1) does not apply to his petition because the deadline was not included in the portion of the statute that pertains to second or successive petitions, 28 U.S.C. § 2244(b), or the general statute concerning federal habeas petitions filed by state prisoners, 28 U.S.C. § 2254. (ECF No. 34 at 12).

Anstey's interpretation of 28 U.S.C. § 2244(d)(1) is unavailing. The statute specifies that "[a] 1-year period of limitation shall apply to an application for a writ of

habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C.A. § 2244(d)(1). As is evident by the clear language of the statute, the one-year deadline applies to any habeas application, not only to a prisoner's first § 2254 petition, as Anstey suggests. The notion that second or successive habeas petitions are unrestrained by the limitation period is contrary to the principal purpose of the AEDPA to reduce delays in the execution of sentences and to promote comity, finality, and federalism. If a state prisoner satisfies the requirements of 28 U.S.C. § 2244(b)(2) in order to bring a second or successive petition based upon a new rule of constitutional law or new factual predicate, it does not follow that that the prisoner has free reign to file the habeas petition at any time, even decades after the new rule of constitutional law was made retroactive to cases on collateral review or the new factual predicate could have been discovered.

Rather, in Anstey's case, assuming *arguendo* that the later adoption of the NFPA 921 qualifies as a "factual predicate that could not [have been] discovered previously through the exercise of due diligence," as Anstey argues, he had one year from the date on which he could have discovered such factual predicate to file his § 2254 petition under the AEDPA. (ECF No. 34 at 2); *McQuiggin v. Perkins*, 569 U.S. 383, 388–89 (2013). Critically, the relevant date is when Anstey *could have* discovered the factual predicate for his claims through the exercise of due diligence, not when he actually discovered the factual predicate for his claims. 28 U.S.C. § 2244(b)(2). As previously discussed, Anstey's petition contends that the testimony offered at his trial was contrary to the 1992 version of the NFPA 921. (ECF No. 1 at 35). Therefore, the factual predicate for his claims was discoverable even before his conviction in 1995. However, Anstey maintains that the NFPA 921 "was not recognized as the prevailing standard of care until the early 2000s."

17

(ECF No. 34 at 3). Giving Anstey the benefit of the doubt that he could not have discovered the NFPA 921 until it became the benchmark for fire investigation in the early 2000s, the one-year deadline passed years before Anstey filed his federal petition on June 28, 2017. Going further, the expert affidavits that Anstey attached to his petition relied upon the 2011 version of the NFPA 921. (ECF No. 1-2 at 3 n.3, 21 n.6). According to one of the experts, he used that version of the NFPA 921 not because it provided new techniques or contained significant scientific advancements that changed the complexion of Anstey's case, but simply because it happened to be the most recent version of the standards at the time he was completing his review. (ECF No. 1-2 at 3, n. 3). Nevertheless, even using that edition of the NFPA 921, the alleged "factual predicate" for Anstey's claims clearly could have been discovered in 2011. Therefore, when construing the period most liberally in Anstey's favor, the one-year statute of limitations began in 2011 when the version of NFPA 921 was published that provided the fire investigation standards that form the basis of Anstey's expert affidavits in support of his habeas petition.

The undersigned notes that Anstey's second state habeas petition ordinarily would have tolled the AEDPA deadline. 28 U.S.C.A. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). However, under any of the conceivable calculations stated above, whether the period began in 1992 when NFPA 921 was first published, whether it began in the "early 2000s" when NFPA 921 became the national standard, or whether it began in 2011 when the version of NFPA 921 on which Anstey's habeas experts rely was published, the one-year AEDPA deadline expired before Anstey

filed his second state habeas petition in May 2014. Therefore, Anstey's second state habeas petition did not toll the AEDPA period, because there was no period left to toll. *Castillo v. Perritt*, 142 F. Supp. 3d 415, 417 (M.D.N.C. 2015) ("[O]nce the limitations period has expired, later-filed State post-conviction petitions cannot revive it.") (citations omitted). Given that no state proceeding tolled the limitations period, Anstey's federal petition is untimely unless it is subject to equitable tolling.

The one-year limitations period under the AEDPA may be tolled in "'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (quoting *Rouse*, 339 F.3d at 246). The doctrine of equitable tolling is available only in extraordinary cases and only when the petitioner has diligently pursued his rights. Garden variety attorney negligence, lack of knowledge regarding the law, and *pro se* status are all insufficient grounds to justify equitable tolling. *See Lanahan v. Helsel*, No. CV JFM-15-2133, 2016 WL 4742231, at *2 (D. Md. Sept. 8, 2016) (citations omitted); *also Barrow v. New Orleans S.S. Ass'n,* 932 F. 2d 473, 478 (5th Cir. 1991) (refusing to apply equitable tolling where the delay in filing was the result of petitioner's unfamiliarity with the legal process or his lack of legal representation); *Rouse v. Lee,* 339 F.3d 238,248-249 (4th Cir. 2003) (negligent mistake by party's counsel in interpreting AEDPA statute of limitations does not present extraordinary circumstances warranting equitable tolling); *Smith v. McGinnis,* 208 F.3d 13, 18 (2nd Cir. 2000) (*pro se* status does not establish sufficient ground for equitable tolling); *and Felder v. Johnson,* 204 F.3d 168, 171-173 (5th Cir. 2000) (lack of notice of AEDPA amendments and ignorance of the law are not rare and exceptional circumstances that warrant equitable tolling). Additionally, the petitioner must

"demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Britt v. Commonwealth of Virginia*, No. 1:15CV1581, 2016 WL 1532238, at *3 (E.D. Va. Apr. 14, 2016) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

Considering Anstey's argument that the one-year AEDPA period does not apply to his petition or, alternatively, that his petition was timely filed, it is unsurprising that he does not advance an argument regarding equitable tolling. Irrespective of Anstey's silence on the issue, the record very clearly does not demonstrate any extraordinary circumstances that were external to Anstey's conduct that prevented him from timely filing his § 2254 petition despite the diligent pursuit of his rights.

For the above reasons, the undersigned **FINDS** that Anstey's petition is untimely under the AEDPA and must be dismissed.

### C. Anstey's actual innocence claims do not render his second or successive petition cognizable

As noted, Anstey contends that he raises two types of actual innocence claims: (1) a "gateway" actual innocence claim based upon *Schlup v. Delo*, 513 U.S. 298 (1995), and *McQuiggin*, 569 U.S. at 392, and (2) a "freestanding" actual innocence claim that Anstey states was "established in *Herrera v. Collins*, 506 U.S. 390 (1993) and affirmed in *McQuiggin*." (ECF No. 34 at 14-15).

The undersigned first addresses Anstey's "gateway" actual innocence claim. The Supreme Court established in *Schlup* that a federal court can consider claims that would otherwise be procedurally barred if a petitioner offers new evidence that would have

made it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536–37 (2006) (citing *Schlup*, 513 U.S. at 327); *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). According to *Schlup*, this formulation "ensures that petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid a manifest injustice." *Id.* Importantly, the actual innocence exception is not a freestanding claim for habeas relief, but it is rather a gateway for a federal court to consider otherwise defaulted claims. *Boothe v. Ballard*, No. 2:14-CV-25165, 2016 WL 1275054, at *52 (S.D.W. Va. Mar. 31, 2016), *aff'd*, 670 F. App'x 193 (4th Cir. 2016); *Dreyfuse v. Pszczokowski*, No. 3:16-CV-06717, 2017 WL 470908, at *1 (S.D.W. Va. Feb. 3, 2017); *Roberts v. Hejirika*, No. AW-11-CV-868, 2013 WL 2154797, at *8 (D. Md. May 16, 2013). "To be credible, … a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Booth*, 2016 WL 1275054, at *53 (citing *Schlup*, 513 U.S. at 324).

In *McQuiggin*, the Supreme Court considered the *Schlup* standard in the context of an untimely habeas petition. The Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* … or, as in [McQuiggin's] case, expiration of the statute of limitations." *McQuiggin*, 569 U.S. at 386. However, the ruling in *McQuiggin* was confined to first habeas petitions. *Id.* at 396; *Ruff v. Perdue*, No. 1:14-CV-00221, 2015 WL 13735441, at *3 (N.D.W. Va. Mar. 23, 2015), *report and recommendation adopted*, 2015 WL 6692254 (N.D.W. Va. Nov. 3, 2015). The Supreme Court made clear in *McQuiggin* that the AEDPA imposes a higher burden on second or successive habeas

petitioners. *Id.* at 396-97. In order for a federal court to entertain a claim in a second or successive petition, the petitioner must satisfy 28 U.S.C. § 2244(b)(2)(B). *Id.* For the reasons already discussed, Anstey does not satisfy the § 2244(b)(2)(B) standard. Therefore, he cannot traverse the actual innocence procedural gateway.

Next, the undersigned considers Anstey's independent claim of actual innocence. Anstey argues that a freestanding actual innocence claim was established in *Herrera* and affirmed in *McQuiggin*. (ECF No. 34 at 15). However, the Supreme Court stated in *Herrera* that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*, 506 U.S. at 400. As the Court discussed, "habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 404. In *McQuiggin*, the Supreme Court stated that it has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin*, 569 U.S. at 392 (citing *Herrera*, 506 U.S. at 404–405). Therefore, the Supreme Court has not definitively resolved the issue. As it presently stands, a freestanding claim of actual innocence has not been recognized by the Supreme Court or by the Fourth Circuit outside of the capital context. *Smith v. Mirandy*, No. 2:14-CV-18928, 2015 WL 1395781, at *4 (S.D.W. Va. Mar. 25, 2015); *Cooper v. O'Brien*, No. 5:14-CV-00112, 2015 WL 13735779, at *3 n.5 (N.D.W. Va. Aug. 28, 2015), *report and recommendation adopted*, 2015 WL 6085717 (N.D.W. Va. Oct. 16, 2015), *aff'd*, 639 F. App'x 196 (4th Cir. 2016) ("Thus, a freestanding claim of actual innocence is not cognizable in federal habeas corpus and such claim should be

dismissed."); *Teleguz v. Pearson*, 689 F.3d 322, 328 n.2 (4th Cir. 2012) (mentioning, in dicta, that a petitioner can raise a freestanding innocence claim in a capital case).

The undersigned notes that Anstey does not assert that he has new evidence proving his factual innocence, but rather he argues that, if he had received a fair trial, the state could not have proven him guilty of arson beyond a reasonable doubt. Evidence which would show that Anstey did not commit the crime as compared to an argument that the state did not have enough evidence to convict him of the crime, as Anstey alleges in this case, are very distinct concepts. Actual innocence refers to factual innocence, not legal insufficiency. *See, e.g., Souvanaratana v. Clarke*, No. 3:16-CV-00993-JAG, 2017 WL 3447810, at *8 (E.D. Va. July 21, 2017), *report and recommendation adopted,* 2017 WL 3446525 (E.D. Va. Aug. 10, 2017), *appeal dismissed,* 712 F. App'x 317 (4th Cir. 2018). Furthermore, although the Supreme Court has not articulated a standard under which freestanding actual innocence claims would be evaluated, it has made clear that the "threshold for any hypothetical freestanding innocence claim is extraordinarily high." *Teleguz*, 689 F.3d at 328 (markings and citations omitted).

In any event, for the reasons stated above, the undersigned **FINDS** that Anstey's professed actual innocence does not render the claims in his successive petition cognizable on federal habeas review.

III.    **Proposal and Recommendations**

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** as follows:

> 1.    Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 1), be **DENIED** and **DISMISSED, with prejudice**; and

2.    Respondent's Motion for Judgment on the Pleadings, (ECF No. 22), be **GRANTED**.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and counsel of record.

**FILED:**  December 19, 2018

Cheryl A. Eifert
United States Magistrate Judge

24